# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| SPARKS CONSTRUCTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No. 2:15CV67NCC |
| | ) | |
| HARTZELL HARDWOODS, INC., and | ) | |
| THE PHOENIX INSURANCE CO., d/b/a | ) | |
| THE TRAVELERS CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the court is the "Motion to Drop The Phoenix Insurance Company as Defendant or, in the alternative, to Sever and for a Separate Trial" filed by Defendant The Phoenix Insurance Company, d/b/a The Travelers Casualty Company (Phoenix). (Doc. 40). Plaintiff Sparks Constructors, Inc., (Sparks) has filed a Memorandum in opposition to Phoenix's Motion (Doc. 42), and Phoenix has filed a Reply (Doc. 43). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 22).

## BACKGROUND

Sparks' First Amended Complaint alleges Breach of Contract (Count I) Quantum Meruit (Count II), Suit on Account (Count III), Promissory Estoppel

(Count IV), and Reformation (Count VIII) against Defendant Hartzell Hardwoods, Inc., (Hartzell). Sparks also alleges, in the alternative, Breach of Contract (Count V) and "Vexatious Refusal to Pay Under Sections 375.296 and 375.420, RSMO" (Count VI), on the part of Phoenix. Additionally, Sparks seeks Declaratory Judgment (Count VII) against both Hartzell and Phoenix. (Doc. 32).

Common to Counts I through VIII, Sparks alleges that Sparks and Hartzell entered into a "Standard Form of Agreement Between Owner and Contractor" (the Contract), pursuant to which Sparks agreed to provide the labor, materials, equipment, and services necessary to contract a pre-engineered post-framed building referred to as the Hartzell Lumber Storage & Boiler Feed Building (the Building); that, also pursuant to the Contract, Sparks agreed to "provide property insurance to cover the value of [Hartzell's] property, <u>including any Work</u> provided under" the Contract; and that, under the Contract, "Work" is defined as "the construction and services required by the Contract Documents, and include[d] all other labor materials, equipment and services provided" by Sparks to fulfill its obligations. (Doc. 32) (emphasis in original).

Sparks also alleges that, on about August 7, 2012, it began construction of the Building; that, on about July 14, 2013, prior to the completion of the construction, nine trusses collapsed on the east side of the Building, resulting in the collapse of the Building's roof; that, as a result of the Collapse, additional costs,

totaling $128,648.80, were incurred by Sparks; that, despite Hartzell's representing to Sparks that it would assist with the additional costs related to the Collapse, Hartzell has refused to pay for any of the additional costs associated with the Collapse; and that the damage to the Building constitutes damage to the Work under the Contract for which Hartzell was obligated to obtain property insurance. (Doc. 32).

Sparks contends that Hartzell was insured under a commercial insurance policy with Phoenix (the Policy) during the period in question, and, even though Sparks was not listed as an insured under the Policy, it is entitled to recover under the Policy for damages it suffered as a result of the Collapse, given that the Building qualified as a covered property under the Policy. (Doc. 32 at 8-10); Doc. 41 at 3).

Further, Sparks alleges that Hartzell did not purchase insurance as required by the Contract, or, alternatively, purchased the insurance but failed to make a claim on it; that Sparks complied with all the terms and conditions of the Contract and satisfied all conditions precedent to its right to payment for costs incurred by Sparks to repair the Collapse; and that, "[u]nder the terms and conditions of the Contract, Hartzell or [Phoenix] became obligated to pay [] Sparks insurance proceeds recoverable under the property insurance for the loss sustained in connection with the Collapse." (Doc. 40, par. 6-22).

In Counts I through VI of the First Amended Complaint, Sparks seeks damages in the amount of or in excess of $128,648.80, plus "prejudgment and post-judgment interest, costs, [and] attorney's fees." Additionally, in Count VI, Sparks also seeks statutory vexatious damages, in Count VII, Sparks seeks recovery under the Policy for the Collapse, with no specific amount specified, and, in Count VIII, Sparks seeks recovery of proceeds under the Policy.

In its Answer to the First Amended Complaint, Hartzell denies that it was obligated under the Contract to procure builder's risk property insurance to cover the loss claimed by Sparks and asserts that the Contract specifically omitted such coverage. Further, Hartzell contends that any damages or additional costs were a result of Sparks' own negligent construction and defective workmanship, and that, therefore, Sparks was not entitled to any insurance proceeds under Hartzell's property insurance policy. Also, Hartzell asserts Counterclaims against Sparks for Breach of Contract (Counts I, II, and III), and Breach of Contract/Breach of Warranty (Count IV). For damages in each of its Counterclaims, Hartzell seeks recovery for lost profits, attorney fees, travel expenses, and lost employee time spent managing the Collapse and relocating inventory. (Docs. 14, 38). In its Answer to Hartzell's Counterclaims, Sparks asserts as an affirmative defense that "Hartzell lacks standing to assert its claims in that Sparks had an insurable interest in the Project property and the Work and title thereto did not pass to Hartzell until

after final payment for the Work." (Doc. 16 at 6; Doc. 39). In its Answer to the First Amended Complaint, Phoenix denies that coverage exists under the Policy for Sparks' alleged loss. (Doc. 36).

Also, as relevant to the pending Motion, the Policy provides:

A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss.
1. Covered Causes of Loss
Covered Causes of Loss mean RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1. Excluded in Section B., Exclusions;
2. Limited in Section C., Limitations; or
3. Excluded or limited in the Declarations or by endorsement.

. . . .

B. EXCLUSIONS

2. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . . .

i. Collapse of Building

Collapse of buildings or structures meaning an abrupt falling down or caving in of a building or substantial part of a building with the result being that the building or substantial part of a building cannot be occupied for its intended purpose.

(1) A building or part of a building:
(a) That is in imminent danger of abruptly falling down or

caving in; or
(b) Suffers a substantial impairment of structural integrity; is not considered a collapse but is considered to be in a state of imminent collapse.

(2) However, we will pay for collapse of buildings or structures if caused only by one or more of the following:

(a) Weight of people or personal property;
(b) Weight of rain that collects on a roof, or
(c) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling, or renovation is complete and is caused in part by a cause of loss listed in 1.i.(2)(a) through (d) above, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling, or renovation, contributes to the collapse.

(Doc. 32-3 at 30-31).[1]

## LEGAL FRAMEWORK

Federal Rule of Civil Procedure 20(a) provides, in regard to Permissive Joinder of Parties as follows:

(2) Defendants. Persons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

---

[1] Hartzell's "Building 31, in Kirksville," Missouri, was added to the Policy, effective August 1, 2012. (Doc. 32-6 at 61).

> (3) Extent of Relief. Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

Additionally, Rule 20(b) provides that:

> The court may issue orders--including an order for separate trials--to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.

Taking into account that "single trials generally tend to lessen delay, expense, and inconvenience to all concerned," Rule 20 aims to promote "trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Mosely v. Gen. Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974) (citing 7 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1652 at 265 (1972)).

Although "joinder of claims, parties and remedies is strongly encouraged," permissive joinder is not applicable in every case. Mosely, 497 F.2d at 1332-33. See also United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). Rule 20 does, however, impose two requirements for permissive joinder of Defendants: "(1) a right to relief must be asserted by, or against, each [] [] defendant relating to or arising out of the same

transaction or occurrence, or series of transactions or occurrences; and (2) some question of law or fact common to all the parties must arise in the action." Mosley, 497 F.2d at 1333. "The transaction and common question requirements of [Rule 20] are 'flexible concepts' to implement its purpose," and "should be 'read as broadly as possible whenever doing so is likely to promote judicial economy.'" Travelers Ins. Co. v. Intraco, Inc., 163 F.R.D. 554, 556 (S.D. Iowa 1996) (quoting 7 C. Wright § 1653, at 389).

As explained by the Eighth Circuit:

> In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued. 7 C. Wright Federal Practice and Procedure § 1653 at 270 (1972). No hard and fast rules have been established under the rule. However, construction of the terms "transaction or occurrence" as used in the context of Rule 13(a) counterclaims offers some guide to the application of this test. For the purposes of the latter rule,
>
>> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.
>
> Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. 7 C. Wright, Federal Practice and Procedure § 1653 at 270 (1972). The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

8

> . . . .
>
> The second requisite necessary to sustain a permissive joinder under the rule is that a question of law or fact common to all the parties will arise in the action. The rule does not require that all questions of law and fact raised by the dispute be common. Yet, neither does it establish any qualitative or quantitative test of commonality. For this reason, cases construing the parallel requirement under Federal Rule of Civil Procedure 23(a) provide a helpful framework for construction of the commonality required by Rule 20. In general, those cases that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of context[s]. 7 C. Wright, Federal Practice and Procedure § 1763 at 604 (1972).

Mosley, 497 F.2d at 1333-34.

Finally, Rule 20 "vests in the district court the discretion to order separate trials or make such other orders as will prevent delay or prejudice." Mosley, 497 F.2d at 1332.

## DISCUSSION

Phoenix argues that neither requirement of Rule 20 is met and that, therefore, severance of Sparks' causes of action against Hartzell and Phoenix is appropriate. (Doc. 41 at 5-8; Doc. 43 at 2-8). Applying the above-stated principles, however, for the reasons set forth below, the court finds that the requirements for permissive joinder under Rule 20 are met, and that permissive joinder of Defendants Hartzell and Phoenix in a single action is proper.

First, in regard to Rule 20(a)(2)(A)'s requirement of a single transaction, occurrence, or series of transactions or occurrences, Sparks' claims against both

Hartzell and Phoenix, as well as Hartzell's Counterclaims, arise out of the construction of the Building and the Collapse. Clearly, the factual basis of Sparks' claims against Hartzell and Phoenix are "logically related." Mosley, 497 F.2d at 1334. Moreover, the claims arise from a series of occurrences, commencing with Sparks and Hartzell entering into the Contract. Notably, in Sun-X Glass Tinting of Mid-Wisconsin, Inc. v. Sun-X International, Inc., 227 F. Supp. 365 (W.D. Wisc. 1964), cited by Phoenix in support of its argument that the first requirement of Rule 20 is not met, the court found that the solicitation and execution of four distributor-dealer contracts did not arise from the same transaction, occurrence, or series of transactions, but upon doing so, distinguished Akely v. Kinnicutt, 144 N.E. 682 (N.Y. 1924), a case where one act was the "genesis" of and the "foundation" for claims by numerous plaintiffs against a single defendant. Similarly to Akely, Sparks' claims against Phoenix and Hartzell are related to each other by a series of events; the Contract and the Collapse of the Building provide the genesis and the foundation for all claims in this matter. See In re Prempro Product Liability Litigation, 591 F.3d 613, 623 (8th Cir. 2010) ("After considering the Rule 20 joinder standards, we conclude that the [defendants] have not met their burden of establishing that plaintiffs' claims are egregiously misjoined. Plaintiffs' claims arise from a series of transactions between HRT pharmaceutical manufacturers and individuals that have used HRT drugs."). The fact that Sparks'

claims against Hartzell and Phoenix are based on separate contracts does not negate the connection between claims. Phoenix is simply mistaken in suggesting that its "claims against Hartzell do not affect Phoenix or vice versa." (Doc. 41 at 7). Thus, the court finds that Rule 20(a)(2)(A)'s requirement that claims arise out of the same transaction or occurrence is met.

As for Rule 20(a)(2)(B)'s requirement that there be common questions of law *or* fact, Sparks seeks the same amount of base damages from both Hartzell and Phoenix.[2] Further, at issue is whether Sparks may recover under the Policy; Hartzell and Phoenix are both parties to the Policy; both Hartzell and Phoenix contend that Sparks is not entitled to recover under the Policy; and both Hartzell and Phoenix have an interest in the determination of coverage under the Policy. Further, the claims against Hartzell and Phoenix involve a significant amount of overlapping evidence, including the extent of the alleged negligent construction of the Building. Thus, the court finds that Rule 20(a)(2)(B)'s requirement that there be common questions of law *or* fact is met.

To the extent not all claims in the First Amended Complaint are against both Hartzell and Phoenix, for permissive joinder to be proper, each defendant does not "need [to] be interested in [] [] defending against all the relief demanded." Rule

---

[2] The court is aware that statutory damages and attorney's fees are sought by Sparks against Phoenix in Count VI. However, this does not change the analysis given the significant overlapping evidence.

11

20(a)(3). Further, "absolute identity of all events is unnecessary." See Mosely, 497 F.2d at 1333.

As for Phoenix's arguments that Sparks asserts different theories against Hartzell and Phoenix and that their liability is dependent on separate contracts, Rule 20(a)(2)(B) requires only that there be a *single question* of law *or* fact common to all defendants. As stated above, there are multiple common questions of both law and fact applicable to Sparks' claims against Hartzell and Phoenix.

To the extent that Phoenix argues that permissive joinder is not appropriate because judicial economy will not be served, to the contrary, judicial economy will be served by trying Sparks' claims against Hartzell and Phoenix in a single cause of action because separate trials would be duplicative of time and costs, not to mention duplicative of the evidence presented. See Travelers, 163 F.R.D. at 556 ("The transaction and common question requirements of [Rule 20] are 'flexible concepts' to implement its purpose," and "[t]hey should be 'read as broadly as possible whenever doing so is likely to promote judicial economy.'") (quoting C. Wright § 1653 at 389).

Phoenix argues it will be prejudiced by a single trial because in a single trial the jury would be more likely to consider Hartzell's ability to pay if it is covered by an insurance policy. (Doc. 41 at 9-11). Indeed, "it is well established that the existence of a liability insurance policy is not admissible to show one's negligence

or other wrongful conduct." Charter v. Chleborad, 551 F.2d 246, 248 (8th Cir. 1977) (per curiam) (citing Fed. R. Evid. 411; C. McCormick, Evidence § 201 at 479 (2d ed. 1972)). See also Pope v. Pope, 179 S.W. 3d 442, 463 (Mo. Ct. App. 2005) ("In personal injury actions, it is generally reversible error to directly or indirectly show that [the] defendant carries liability insurance.") (citation omitted). Further, evidence of insurance may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. Charter, 551 F.2d at 249 (citing Fed. R. Evid. 403).

The rule against admission of evidence of insurance, however, "does not require the exclusion of evidence of insurance against liability when offered for" a purpose other than proof of negligence or other wrongful conduct such as "proof of agency, ownership, or control, or bias or prejudice of a witness." Charter, 551 F.2d at 248 (quoting Fed. R. Evid. 411). See also Pope, 179 S.W. 3d at 463 (holding that in personal injury cases, evidence of insurance is properly admitted "when it is relevant and material to some issue involved in the case").

Further, law which precludes introduction of evidence that a defendant *in a personal injury case* carries liability insurance is not applicable in the instant matter which arises under contract law. Particularly, evidence of insurance is admissible where, as in the matter under consideration, "the issues in the case make the fact of insurance relevant." Pope, 179 S.W. 3d at 463 (quoting

McCaffery v. St. Louis Pub. Serv. Co., 252 S.W.2d 361, 367 (Mo. 1952)). Notably, insurance is relevant to all issues in this matter, and would be relevant even if the court were to order separate trials for Hartzell and Phoenix.

Moreover, both Hartzell and Phoenix have an interest in a determination of coverage under the Policy. Thus, it can be argued that Phoenix is a necessary party under Fed. R. Civ. P. 19(a)(1), which requires that a person must be joined where:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

To the extent that evidence of insurance may arguably be inadmissible for some purposes, Phoenix may, at the appropriate time, propose a limiting jury instruction. See, e.g., Pope, 179 S.W. 3d at 463-64 ("[E]vidence is admissible if it tends to prove one issue, even though it is not admissible to prove another issue, and is prejudicial upon such latter issue."; "With regard to the introduction of insurance coverage evidence which is probative as to a material issue in the case, the Court has required that the interests of both plaintiffs and defendants be

protected through the use of an appropriate limiting instruction.") (quoting Boten v. Sheffield Ice Co., 166 S.W. 883, 888 (Mo. Ct. App. 1914)). Indeed, a "jury is presumed to follow [the court's] instructions." Weeks v. Angelone, 528 U.S. 225, 234 (2000). See also Richardson v. March, 481 U.S. 200, 206 (1987) (recognizing "the almost invariable assumption of the law that jurors follow [the court's] instructions").

In any case, despite Phoenix's argument to the contrary (Doc. 41 at 11), separate trials could, in fact, prejudice Sparks as it would be inconvenienced and incur unnecessary expenses in presenting duplicative evidence. See Mosely, 497 F.2d at 1332. Cf. Magna Pictures Corp. v. Paramount Pictures, 265 F. Supp. 144, 153-54 (C.D. Cal. 1967) (under Fed. R. Civ. P. 42(b), separate trials for counterclaims would not further convenience, avoid prejudice, or be conducive to expedition and economy).

Finally, cases upon which Phoenix relies are distinguishable from the matter under consideration. For example, in Movie Systems, Inc. v. Abel, 99 F.R.D. 129, 130 (D. Minn. 1983), the court found that that joinder of causes of action for unlawful pirating of microwave signals against 1,795 defendants in 18 similarly worded actions with 100 defendants in each filing was "tolerably permitted by Rule 20(a)." Nonetheless, the court deemed joinder improper because the filings "creat[ed] unmanageable administrative problems" and "occasioned unfairness,

confusion and prejudice to defendants in their efforts to answer [the] plaintiffs' complaints, make responsive motions and conduct pre-trial proceedings." In Tele-Media Company of Western Connecticut v. Antidormi, 179 F.R.D. 75, 76 (D. Conn 1998), upon which Phoenix also relies, the court found the plaintiff's joinder of 104 individual defendants who allegedly obtained unauthorized reception of pay-for view programming was improper because there was no "conspiracy" or "joint action" and because of the "significant burden" placed on the clerk's office. In both Movie Systems and Tele-Media the only connection between the defendants' alleged improper conduct was that it was similar, and the plaintiffs' right to relief against each defendant was not dependent on the conduct of other defendants. In the matter under consideration, Hartzell's and Phoenix's conduct is interrelated and, given that this matter only involves two defendants, the joinder of Plaintiff's claims against Hartzell and Phoenix fails to create any administrative problems for the court.

In conclusion, the court finds that both requisites for permissive joinder under Rule 20(a) have been met, see Mosley, 497 F.2d at 1333; that Phoenix has failed to suggest reasons sufficient to necessitate severance of claims against it from claims against Hartzell; that Phoenix has not met its burden of establishing that Sparks' claims are egregiously misjoined, see In re Prempro, 591 F.3d at 623; and that Phoenix's Motion to Drop the Phoenix Insurance Company as Defendant

or, in the alternative, to Sever and for a Separate Trial is, therefore, without merit and should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Phoenix's Motion to Drop the Phoenix Insurance Company as Defendant or, in the alternative, to Sever and for a Separate Trial is **DENIED**. (Doc. 40).

Dated this 13th day of November 2015.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE